Michael S. Agruss (SBN: 259567)
AGRUSS LAW FIRM, LLC
4809 N Ravenwood Ave., Suite 419
Chicago, IL 60640
Tel: 312-224-4695
Fax: 312-253-4451
michael@agrusslawfirm.com
Attorney for Plaintiff,
SHELLY AGNOLETTO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| SHELLY AGNOLETTO,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>ALLY FINANCIAL, INC.,  )<br>  )<br>    Defendant.  ) | No.  5:17-cv-1671 |

## PLAINTIFF'S COMPLAINT

Plaintiff, SHELLY AGNOLETTO ("Plaintiff"), through her attorneys, Agruss Law Firm, LLC, alleges the following against Defendant, ALLY FINANCIAL, INC. ("Defendant"):

### INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Count II of Plaintiff's Complaint is based on the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA").

### JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1367.

4. This court has federal question jurisdiction because this case arises out of violations of

federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

5. This court has supplemental jurisdiction over the state law claim alleged herein pursuant to 28 U.S.C. § 1367(a) because it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff, is a resident of the City of La Quinta, Riverside County, California

8. Defendant is a national bank based in the City of Detroit, Wayne County, Michigan.

9. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff is a consumer, and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by Cal. Civ. Code § 1788.2(h).

12. Defendant is a debt collector as that term is defined by Cal. Civ. Code § 1788.2(c), and sought to collect a consumer debt from Plaintiff.

## FACTUAL ALLEGATIONS

13. Within four (4) years of Plaintiff filing this Complaint, Defendant called Plaintiff's cellular telephone at xxx-xxx-1000 to collect on an alleged debt.

14. All of the telephone calls Defendant made to Plaintiff were an attempt to collect on an

debt allegedly owed by Plaintiff.

15. Defendant calls Plaintiff from several telephone numbers, including 888-673-8490, 855-750-2559, and 888-282-3139, which are some of Defendant's telephone numbers.

16. None of the calls Defendant made to Plaintiff were for an emergency purpose.

17. On or about June 6, 2016, Plaintiff spoke to one of Defendant's collectors (Tyra Richardson) and requested that Defendant stop calling Plaintiff's cellular telephone.

18. During the above-referenced telephone conversation, Defendant's collector responded to Plaintiff that they must continue to call Plaintiff.

19. Despite Plaintiff's requests that Defendant stop calling Plaintiff's cellular telephone, Defendant continued to call Plaintiff's cellular telephone.

20. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

21. All of the calls Defendant made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

22. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephones.

23. Defendant has never had consent to call Plaintiff.

24. Even if at one point Defendant had permission to call Plaintiff's cellular telephone, Plaintiff revoked such consent.

25. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

26. On several occasions, Plaintiff has answered calls from Defendant and have been greeted

PLAINTIFF'S COMPLAINT

by an automated message.

27. When Plaintiff answered Defendant's calls, she was greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

28. Within four (4) years of Plaintiff filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiff's cellular telephone.

29. Within four (4) years of Plaintiff filing this Complaint, Defendant called Plaintiff's cellular telephone in predictive mode.

30. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

31. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

32. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

33. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

34. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

35. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

36. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple consumers.

37. While Defendant called Plaintiff's cellular telephone, Plaintiff's cellular telephone line was unavailable for legitimate use during the unwanted calls.

38. The dead air that the Plaintiff experienced on the calls that he received is indicative of the use of an automatic telephone dialing system. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

39. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;

    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and

    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE
## TELEPHONE CONSUMER PROTECTION ACT

40. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, SHELLY AGNOLETTO, respectfully requests judgment be entered against Defendant, ALLY FINANCIAL, INC., for the following:

41. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and request $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

42. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and request treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

43. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

44. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

45. Defendant violated the RFDCPA based on the following:

   a. Defendant violated § 1788.11(d) of the RFDCPA by placing telephone calls to Plaintiff repeatedly and continuously so as to annoy Plaintiff.

   b. Defendant violated § 1788.11(e) of the RFDCPA by communicating with Plaintiff with such frequency as to be unreasonable and to constitute as harassment to Plaintiff under the circumstances.

   c. Defendant violated § 1788.17 of the RFDCPA by violating the following sections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"):

      i. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequences of which was to harass, oppress, and abuse Plaintiff in connection with the collection of an alleged debt; and

      ii. Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

WHEREFORE, Plaintiff, SHELLY AGNOLETTO respectfully requests judgment be entered against Defendant, ALLY FINANCIAL, INC., for the following:

46. Plaintiff is entitled to and seek injunctive relief prohibiting such conduct in the future.

47. Any other relief that this Honorable Court deems appropriate.

48. Statutory damages of $1,000.00 pursuant to the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.30(b).

49. Statutory damages of $1,000.00 pursuant to § 1788.17 of the RFDCPA which subjects

PLAINTIFF'S COMPLAINT

debt collectors to remedies under § 1692k of the FDCPA.

50. Costs and reasonable attorneys' fees pursuant to the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.30(c).

51. Any other relief that this Honorable Court deems appropriate.

DATED:  August 18, 2017

Respectfully submitted,
AGRUSS LAW FIRM, LLC

By:  /s/ Michael S. Agruss
Michael S. Agruss
Attorney for Plaintiff

PLAINTIFF'S COMPLAINT